[Civ. No. 15659. Fourth Dist., Div. Two. Mar. 31, 1977.]

ANTONIO N. RIOS, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Lawrence K. Kirk for Plaintiff and Appellant.

Ruston, Nance & DiCaro and Donald A. Ruston for Defendant and Respondent.

**OPINION**

**TAMURA, J.**—This is an action against Allstate Insurance Company (Allstate) for damages for an alleged breach of its duty of good faith and fair dealing in connection with the arbitration of plaintiff's claim under the uninsured motorist coverage of an automobile liability policy issued by Allstate. Plaintiff filed the action without seeking to have the adverse

arbitration award set aside pursuant to Code of Civil Procedure section 1286.2. Allstate's demurrer to the second amended complaint was sustained with leave to amend; plaintiff elected to stand on the complaint; and he appeals from the ensuing order of dismissal.

We have concluded that the policy underlying the doctrine of finality of judgments precludes plaintiff from maintaining his action and that the order below should be affirmed.

The second amended complaint alleges in substance the following:

Plaintiff, the named insured under Allstate's automobile liability policy, was involved in an accident with an uninsured motorist. Plaintiff was thrown from his vehicle and sustained severe brain damage rendering him incapable of recalling how the accident happened.

Allstate's management has a policy of denying valid claims or of settling them at less than their actual value and in pursuance of that policy, Allstate engaged in a calculated scheme to deny plaintiff the benefit of his uninsured motorist coverage. After investigating the accident and determining that the driver of the other vehicle was uninsured, Allstate paid the uninsured motorist and his passenger $500 for property damage and minimal personal injury. The sole purpose in making that payment was to establish a consistent basis for denying plaintiff's claim which, if proved, would cost the company $15,000. Allstate and its agents contrived a "false set of facts" which depicted plaintiff as traveling in the same direction and speed as the uninsured motorist but to his left and making an abrupt right turn into the path of the uninsured vehicle. Allstate was aware of the existence of two unbiased eyewitnesses to the accident whose statements, had they been taken, would have contradicted Allstate's version of the accident. Allstate, however, failed to take their statements and withheld their identities from plaintiff.

Plaintiff's attorney later ascertained the identities of the two witnesses (Robert and Patricia Pimentel), obtained signed statements from them in

which they gave the "true version" of the accident,[1] and furnished Allstate's representative copies of the statements. Upon receipt of the copies, Allstate's representative undertook to annoy, harass and intimidate Mr. Pimental thereby securing his signature to a three-page statement prepared by the Allstate representative. The statement so secured contained the following factual representations which Allstate knew to be untrue:

"1. 'My wife Patsy did not see the accident take place.'

"2. 'I don't know if the truck had made a left turn from Eastbound traffic or made a right turn from Westbound traffic on First.'

"3. 'I do not know that the 1958 Chevy was the one which had made the jackrabbit start.' "

The Pimentels were later deposed by plaintiff's attorney and in the course of that deposition Mr. Pimentel testified he was interviewed several times by an Allstate representative concerning the accuracy of the statement he had given plaintiff's attorney; the man from Allstate called him a "liar" and attempted to confuse Mr. Pimentel; as a result of the annoyance and harassment, Mr. Pimentel signed the three-page statement prepared by the Allstate agent; the statement he originally gave to plaintiff's counsel was his best recollection "at that time" as to how the accident occurred.

---

[1]The statements read as follows:

"My name Robert T. Pimentel. I live at 1709 S. Greenville Santa Ana. On May 3, 1972 I lived at my mother's house 932 W. First St. Santa Ana. I was on the porch with my wife Patsy waiting on the mailman when the accident happened. I saw the 1963 Chevy pickup making a left turn into Manuel's Barber Shop. I[t] appeared he had plenty of time. No cars were coming. Then I saw the 1958 Chevy take off from the signal. He was going about 55 mph when he hit the truck. When he hit the pickup it flew around and landed near the steps of the barber shop. The driver of the pickup flew out of the drivers side when the door flew open and hit his head. His eyes were all cross-eyed.

"After the accident the other car started to leave. The passenger was pointing to the driver to go back and that's what he did.

"[s] Robert Tony Pimentel
"May 17, 1973."

"My name is Patsy Pimentel.

"I have read my husband's statement and this is about what I saw. I didn't see the 1958 Chevy take off from the stoplight but I did see that the 1963 pickup did look like it had plenty of room to make the turn. The 1958 Chevy was going about 55 miles per hour when he hit the pickup.

"[s] Patsy Pimentel
"May 17, 1973."

At the arbitration hearing, Allstate based its defense on a "contrived and false set of facts" and on the Pimentels' confusion and reluctance to testify, all induced by Allstate's harassment and intimidation. As a result, the Pimentels' testimony at the arbitration hearing was inconsistent with statements they had given plaintiff's counsel and because of the inconsistency, the arbitrator disregarded the Pimentels' original signed statements. The arbitrator indicated that if he could have relied on those statements he would have had no difficulty in finding for plaintiff.

The issue we must decide is whether the alleged facts were sufficient to state a cause of action against Allstate for a tortious breach of its implied duty of good faith and fair dealing. In resolving this issue the allegations of the complaint must, of course, be liberally construed. Furthermore, at this posture of the case we are not to be concerned with the possibility. that plaintiff may be unable to prove his allegations or may have difficulty in doing so. (*Gruenberg* v. *Aetna Ins. Co.,* 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

■ The law imposes upon an insurance company the duty to act fairly and in good faith whether it is attending to the claims of third persons against the insured or the claims of the insured itself. (*Silberg* v. *California Life Ins. Co.,* 11 Cal.3d 452, 460-461 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 575; *Richardson* v. *Employers Liab. Assur. Corp.,* 25 Cal.App.3d 232, 239 [102 Cal.Rptr. 547] [disapproved on another ground in *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 580-581, fn. 10]; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 401 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) **(2)** An unreasonable "bad faith" refusal to compensate an insured for a loss covered by an insurance policy may subject the insurance company to liability for a tortious breach of its implied duty of good faith and fair dealing. (*Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, 460-461; *Richardson* v. *Employers Liab. Assur. Corp., supra,* 25 Cal.App.3d 232, 239 [disapproved on another ground in *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 580-581, fn. 10]; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 401.) Failure to accept reasonable settlement offers will similarly subject an insurance company to an action for bad faith. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 573; *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654, 661 [328 P.2d 198, 68 A.L.R.2d 883].)

The case at bench does not fall into either one of the two presently recognized types of bad faith cause of action. Plaintiff does not allege an

unreasonable refusal by Allstate to pay his claim under the uninsured motorist coverage of the policy, nor does he charge Allstate with refusing to accept a bona fide settlement offer. The thrust of plaintiff's complaint is that Allstate embarked on a calculated scheme to defeat plaintiff's claim by concealing from plaintiff the identities of eyewitnesses, by obtaining from those witnesses signed statements which included material factual matters which Allstate knew to be false and by harassing and intimidating the witnesses so as to cause them to be confused and reluctant to testify to the true facts as given in their original signed statements to plaintiff.

The fact that plaintiff's allegations do not fall within presently recognized variants of the bad faith theme does not necessarily mean that he has failed to state a cause of action for the tort of bad faith. The contours of the bad faith cause of action are not necessarily defined by currently recognized types of bad faith cases.  ■   The implied covenant of good faith not only entails a duty that the insurer will act fairly and honestly in resolving disputes with its insured, but concomitantly requires that neither party will do anything which will injure the right of the other to secure the fruits of the agreement. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau,* 15 Cal.3d 9, 14 [123 Cal.Rptr. 288, 538 P.2d 744]; *Gruenberg* v. *Aetna Life Ins. Co., supra,* 9 Cal.3d 566, 573, quoting *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 658.) The question here is whether Allstate, by its alleged course of conduct, so compromised its implied duty as to render its conduct actionable.

Obviously, an insurance company is not precluded from investigating claims to ascertain their validity nor is it foreclosed from interviewing witnesses and obtaining their statements.  ■   Legitimate investigation does not, however, include harassment and intimidation of prospective witnesses or the solicitation of material false statements. Such conduct can be more harmful to an insured than a bare refusal to pay a valid claim since the validity of the claim itself is subverted by the insurer's contrivances. We believe that the facts set forth in plaintiff's complaint, which for the purpose of this appeal must be deemed true, allege a violation of Allstate's implied covenant of good faith.

Plaintiff, however, is not entitled to pursue the course of action he has taken for to permit him to do so would undermine the policy underlying the doctrine of finality of judgments.  ■   That doctrine is grounded on the salutary policy that disputes should be put to final rest by a valid

judgment rendered by a court of competent jurisdiction after a hearing conducted pursuant to procedural due process. (*Kachig* v. *Boothe,* 22 Cal.App.3d 626, 640-641 [99 Cal.Rptr. 393]; see *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [193 P.2d 728].) The doctrine precludes a collateral attack on a prior judgment even where it has been procured by perjured testimony or false evidence. (*Kulchar* v. *Kulchar,* 1 Cal.3d 467, 472-473 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 18; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 632.) It requires a party to meet and expose intrinsic fraud either when it is perpetrated or at least before the judgment becomes final. (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 472-473; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 18; *Pico* v. *Cohn,* 91 Cal. 129, 133-134 [25 P. 970, 27 P. 537].) Otherwise we would be faced with the spectre of endless litigation in which each judgment is upset by a succeeding judgment on the ground the prior judgment was secured by false evidence or intrinsic fraud. The occasional miscarriage of justice engendered by the finality rule is not sufficient to overcome the vice of endless litigation in which nothing is ever finally resolved. (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 472; *Pico* v. *Cohn, supra,* 91 Cal. 129, 133-134; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 640-642.)

■ Technically plaintiff's bad faith cause of action may not be a collateral attack upon the arbitration award nor an attempt to relitigate the same cause of action determined in the arbitration proceeding. ■ A collateral attack is one to prevent enforcement of a judgment or to defeat rights acquired under it. (*Estate of Wemyss,* 49 Cal.App.3d 53, 58 [122 Cal.Rptr. 134]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 5, p. 3588.) ■ Because plaintiff is apparently abiding by the arbitration award and is not seeking to compel payment under the uninsured motorist provision of his policy of insurance, he is not undertaking a collateral attack. Nor is he attempting to relitigate the same cause of action adjudicated in the arbitration proceeding; plaintiff's right to recover damages for Allstate's alleged "bad faith" was not an issue in that proceeding.

But it is likewise clear that plaintiff's bad faith cause of action arises out of Allstate's alleged subversion of the arbitration proceeding and that if he should prevail on this new cause of action, he would be compensated for damages sustained by reason of Allstate's alleged oppressive conduct. The course pursued by plaintiff thus collides with the policy underlying the doctrine of finality of judgments. Plaintiff had at his disposal a procedure by which he could have secured relief from

Allstate's alleged contrivances. (Code Civ. Proc., § 1286.2, subd. (a).)[2] If plaintiff had availed himself of that procedure and prevailed, pursuit of a "bad faith" cause of action might not compromise the policy of finality of judgments since there would no longer be a final judgment, or in this case, a final arbitration award. We need not resolve that issue here, however, because plaintiff seeks redress by way of an independent bad faith cause of action without first availing himself of the statutory procedure for setting aside an arbitration award for "corruption, fraud or other undue means." As we have explained, courts have long since decided that claims of intrinsic fraud must be discovered and exposed in the proceeding in which they were perpetrated so as to avoid multiplicity of suits. (See *Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 472-473; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 18; *Pico* v. *Cohn, supra,* 91 Cal. 129, 133-134; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 632-633, 640-641.) Plaintiff's action represents nothing more than an attempt to circumvent the rule that equitable relief will not be granted against a final judgment infected with intrinsic fraud. (See *Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 472; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 18; *Pico* v. *Cohn, supra,* 91 Cal. 129, 133-134; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 640-641.)

In this respect, plaintiff's bad faith suit is similar to the intentional infliction of emotional distress cause of action alleged by the plaintiffs in *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626. There in a prior action the Kachigs had been adjudicated liable for a broker's fee. After that judgment became final and was satisfied, the Kachigs discovered that it had been obtained on perjured testimony and forged documents. They then brought an action alleging causes of action for (1) fraud, (2) malicious prosecution and (3) intentional infliction of emotional distress. This court determined the first two causes of action to be a covert effort to relitigate matters determined adversely to the Kachigs in the prior proceeding and constituted a collateral attack on a final judgment

---

[2]Code of Civil Procedure section 1286.2 provides: "Subject to Section 1286.4, the court shall vacate the award if the court determines that:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was corruption in any of the arbitrators;

"(c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator;

"(d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or

"(e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

forbidden by the doctrine of finality of judgments. (*Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 636.) We noted, however, that the cause of action for intentional infliction of emotional distress stood on a different footing since prosecution of that cause of action would not involve relitigation of matters already determined by the prior judgment. (*Id.,* at p. 640.) Nevertheless in holding that the cause of action could not be maintained because it "would largely subvert the notion that false evidence must be discovered and exposed in the first trial to avoid multiplicity of litigation," we observed: "In almost every case in which the prior judgment was procured by the adverse party through perjured testimony or a false document, severe emotional distress would be a substantially certain result. Thus, in virtually every such case, the doctrine of finality of judgments could be avoided merely by predicating liability in the second action on the theory of intentional infliction of emotional distress rather than malicious prosecution." (*Id.,* at p. 641.) For like reasons, the doctrine of finality of judgments would be subverted by permitting plaintiff to pursue his bad faith cause of action.

Order affirmed.

Kaufman, Acting P. J., and Morris, J., concurred.