[Civ. No. 3615. Fifth Dist. May 14, 1979.]

LUIS CORRAL et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Chain, Younger, Jameson, Lemucchi, Busacca, Williams & Noriega, Timothy Lemucchi and David D. Stiles for Plaintiffs and Appellants.

King, Eyherabide, Anspach, Friedman & Robinson, William D. Palmer, Stephen Eyherabide, Robert E. King and Arthur E. Schwimmer for Defendant and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—In this action against State Farm Mutual Automobile Insurance Company (State Farm), based upon an alleged breach of its duty of good faith and fair dealing, the trial court granted State Farm's motion for summary judgment. The insureds, Luis Corral (Luis) and his daughter, Mary Alice Corral (Mary), have appealed.

State Farm's policy of liability insurance issued to Luis contained uninsured motorist coverage and medical payments coverage. The coverage extended to Mary who, at the time of the accident in question, was driving Luis' vehicle with the permission of Luis. The driver of the other car was Wesley Warner.[1]

Being unable to arrive at a settlement for the injuries and medical expenses incurred, Mary, pursuant to the terms of the policy, instituted an arbitration proceeding under the uninsured motorist provision of State Farm's policy. Approximately five years later the claim went to hearing before the arbitrator. Mary proved the facts of the accident and that she suffered personal injuries and incurred medical expenses. The central issue in the proceeding was whether Warner was uninsured. At the hearing Mary sought a stipulation that Warner was uninsured. State Farm refused to stipulate. At the end of the hearing the arbitrator by agreement of the parties continued the case to afford an opportunity to Mary to obtain a stipulation or produce additional evidence on the issue of whether Warner was insured. The stipulation was not forthcoming because State Farm would not agree that Warner was uninsured. Twelve days after the hearing Mary's counsel wrote to the arbitrator stating he would submit the matter for decision based on the evidence produced at the hearing. The arbitrator's decision was in favor of State Farm.[2]

Approximately six weeks later, having procured a declaration from Warner that he was uninsured, Mary petitioned the arbitrator to reopen the hearing. The petition was denied on the ground the arbitrator did not

---

[1]The facts of the accident are not particularly relevant except to note that Warner's vehicle struck the rear of Mary's vehicle as both vehicles were proceeding in the same direction. At the arbitration hearing State Farm put on no evidence on the issue of negligence.

[2]While the decision itself does not state the grounds for the award, the parties have indicated in their briefs it was obviously on the basis that Mary had not satisfied her burden of proof that Warner was uninsured. (See *Interinsurance Exch.* v. *Bailes* (1963) 219 Cal.App.2d 830 [33 Cal.Rptr. 533].)

have jurisdiction to reopen the proceeding. A subsequent petition to the superior court to vacate the award pursuant to Code of Civil Procedure[3] section 1286.2[4] was denied on the ground that it was filed in the superior court in excess of the time permitted by law. (See § 1288, fn. 7, *post.*) That decision was affirmed by this court in a nonpublished opinion (*Corral* v. *State Farm Mutual Automobile Insurance Company,* 5 Civ. No. 2822, filed Mar. 15, 1977).

In the case at bench Luis and Mary allege that at all times prior to the arbitration hearing State Farm knew and represented that Warner was uninsured; that at the hearing State Farm fraudulently and falsely contended that Warner was not an uninsured motorist, as a result of which fraud the arbitrator decided the matter against Mary; that in so conducting itself State Farm breached its duty "of dealing fairly and in good faith with their policyholders[;]" and that ". . . said conduct on behalf of State Farm constitutes oppressive and fraudulent conduct on the part of State Farm toward plaintiffs and each of them." The complaint also alleges a bad faith failure to pay medical expenses.[5]

Construing the declarations submitted in support and opposition to the summary judgment motion most favorably to the appellants (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]), appellants show that after the accident in question their attorneys made some preliminary investigation as to the insured status of Warner. Shortly thereafter and some four years before the arbitration hearing Rusty Hargis, claims manager for State Farm, after an office conference, contacted Milton Younger, who is one of the attorneys for Mary. In an affidavit Younger described what transpired:

"On October 7, 1970 Rusty Hargis called my office and told me that Hartford had checked out Wesley Warner and found that he was not covered by any policy that they had issued. Hargis also indicated that they had conducted their own investigation and determined that Warner was not insured and that they would treat Mary Corral's claim as an uninsured motorist case.

---

[3]All code references are to the Code of Civil Procedure unless otherwise stated.

[4]Section 1286.2 provides in pertinent part: .

"Subject to Section 1286.4, the court shall vacate the award if the court determines that:

"(a) The award was procured by corruption, fraud or other undue means; . . . "

[5]Contrary to the appellants' contentions in their argument, nowhere in the complaint do they allege that State Farm willfully refused to make a fair offer of settlement.

"After receiving these assurances from Rusty Hargis our office took no further actions to attempt to locate Warner or to determine whether or not he was, in fact, uninsured." It was also shown that shortly after the accident Warner moved out of the State of California to Colorado and/or Wyoming. Notwithstanding the above referred to assurances, State Farm's attorney at the hearing refused to enter into a stipulation that Warner was in fact insured at the time of the accident because the attorney lacked the authority to do so. State Farm's attorney promised to contact State Farm in order to find out whether he could enter into such a stipulation at a later date. In the event that State Farm would not authorize such a stipulation, State Farm's attorney agreed that the hearing could be continued to permit Mary to present whatever additional information she felt was necessary to establish the uninsured status of Warner. Subsequently, State Farm's attorney informed Mary's counsel that no stipulation would be entered into. Mary's attorney thereafter informed the arbitrator in writing that Mary was satisfied with the evidence she had presented on the issue of the uninsured status of Warner, that she did not wish to present further evidence and that she submitted the matter for decision.

Relying on *Rios* v. *Allstate Ins. Co.* (1977) 68 Cal.App.3d 811 [137 Cal.Rptr. 441], State Farm argued in the trial court and reiterates here its position that to permit the bad faith action would subvert the policy underlying the doctrine of finality of judgments. We believe the current suit is not barred by either the principles of res judicata or finality of judgments and to hold otherwise would constitute an unsound and unjustified extension of those doctrines.

A final judgment on the merits which is not void on its face or subject to collateral attack is protected by the doctrine of res judicata after the time for ordinary direct attack has passed. The doctrine of finality of judgments rests upon principles of res judicata (see *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 18 [193 P.2d 728]), and both principles are grounded on the policy that disputes should be put to final rest by a valid final judgment rendered by a court having jurisdiction. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-811 [122 P.2d 892]; *Lewis* v. *Superior Court* (1978) 77 Cal.App.3d 844, 851 [144 Cal.Rptr. 1].)

It follows that to determine whether plaintiffs' bad faith action is barred by the doctrine of finality of judgments we must look to whether the action is precluded by the principles of res judicata. In the landmark case of *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 813, the

Supreme Court laid down the governing principle. ■ There the court said: "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? [citations] . . . ." (See also *Todhunter* v. *Smith* (1934) 219 Cal. 690, 694-695 [28 P.2d 916].) "The doctrine has 'a double aspect':

"*First*, in a new action on the *same cause of action*, a prior judgment for the defendant is a complete *bar* . . . .

"*Second*, in a new action on a *different cause of action*, the former judgment is not a complete merger or bar, but is effective as a *collateral estoppel*, i.e., it is conclusive on issues actually litigated between the parties in the former action." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 148, p. 3293.)

Under the first aspect of the doctrine, a final judgment in favor of a defendant would constitute a bar to any further suit by the plaintiff on the same cause of action. (*Olwell* v. *Hopkins* (1946) 28 Cal.2d 147, 152 [168 P.2d 972]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 192, p. 3332.) A cause of action is based upon the nature of a plaintiff's injury. " '. . . The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the *facts* from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the *facts* which constitute the defendant's delict or act of wrong.' " (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 22, p. 1707.) ■ Witkin explains the second aspect of the res judicata doctrine: "Clearly a former judgment is not a collateral estoppel on *issues which might have been raised but were not;* just as clearly it is a collateral estoppel on issues which were raised, *even though some factual matters or legal arguments which could have been presented were not.*" (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 201, p. 3339.) (See also *Gorman* v. *Gorman* (1979) 90 Cal.App.3d 454, 464 [153 Cal.Rptr. 479].)

Applying these principles to the facts of this case, we need not discuss the issue of privity[6] and whether the arbitration award is to be given the

___

[6]Luis was not a party to the arbitration proceeding. Whether he had sufficient interest in or control of the arbitration proceeding to render him bound by the award need not be decided in view of our decision that Mary is not precluded from maintaining this bad faith lawsuit.

same effect as a final judgment on the merits.[7] (*Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419] [holding that the doctrines of res judicata and finality of judgments apply to arbitration awards].) █ The determinative question is whether there is an identity of the causes of action and issues involved in the arbitration proceeding and the bad faith action. Manifestly there is not.

The arbitration proceeding was instituted to recover benefits under the uninsured motorist provision of the insurance contract. This cause of action arose from a set of facts surrounding an automobile accident. Moreover, the obligation of the insurance company to pay medical expenses is separate and apart from the uninsured motorist provision at issue in the arbitration proceeding and exists wholly independent of the issue of fault.

In contrast, the bad faith cause of action is not based upon the facts surrounding the automobile collision nor upon the policy provisions at issue in the arbitration proceeding. The bad faith action is in tort for the breach of an implied covenant of good faith and fair and honest dealing in resolving disputes with the insurance company's insureds. That covenant requires that neither party do anything which will injure the right of the other to recover the fruits of the agreement. (*Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232 [102 Cal.Rptr. 547] [disapproved on other grounds in *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 580-581, fn. 10 (108 Cal.Rptr. 480, 510 P.2d 1032)]; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 460-461 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 573.) The facts giving rise to an action for breach of this implied covenant came into being after the collision. Some of these facts did not exist until after the termination of the arbitration hearing. It is apparent that the bad faith action constitutes a different cause of action than that at issue in the administrative hearing. Therefore, the arbitrator's determination in State Farm's favor will not constitute a bar under the first aspect of the res judicata doctrine.

---

[7]The arbitration award became final when Mary failed to petition the superior court to vacate the award within the 100 days allowed by section 1288. It is also noted that in excess of four years has now expired since the arbitrator rendered and served his decision on January 10, 1975. Section 1288 provides: "A petition to confirm an award shall be served and filed not later than four years after the date of service of a signed copy of the award on the petitioner. A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner."

The central issues in the arbitration proceeding were: (1) the uninsured status of the adverse party, Warner, (2) whether negligent conduct of Warner proximately caused the accident, (3) the existence of any contributive fault on the part of the insureds and (4) the consequential compensatory damages for the injuries proximately caused by the accident. The issues in the bad faith action as framed by the complaint are whether State Farm breached its duty to its policyholder as above defined in refusing to pay the medical expenses incurred by Mary and in fraudulently and falsely representing at the hearing that Warner was not uninsured, knowing that Warner was not insured, and having therefore advised appellants that the company (State Farm) would treat the claim as an uninsured motorist claim. Moreover, the damages alleged and recoverable are not limited by the limits of the uninsured motorist coverage nor are plaintiffs limited to compensatory damages.

A mere recitation of the issues encompassed within the two proceedings makes clear that they are not the same under the test of *Bernhard* and that collateral estoppel will not preclude the bad faith action.[8]

■ Upon a motion for summary judgment it, of course, is not the function of the trial court to determine the truth or falsity of the factual statements in the declarations or affidavits. It is sufficient that the declarations, when construed most favorably to the party against whom the motion is made, support the existence of factual conflicts. The affidavits in this case certainly raise factual issues. It is elementary that a motion for summary judgment should be denied if there is a triable issue of fact. (*Daugherty Co.* v. *Kimberly-Clark Corp.* (1971) 14 Cal.App.3d 151, 156 [92 Cal.Rptr. 120].) The function of the trial court upon such a motion is "issue finding" rather than "issue determination." (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

State Farm relies upon *Rios* v. *Allstate Ins. Co., supra,* 68 Cal.App.3d 811. In that case, as here, Rios' bad faith action against the insurance company was founded upon the conduct of Allstate in connection with a prior arbitration proceeding under an uninsured motorist provision. Rios

---

[8]State Farm argues that the allegations of fraudulent conduct were in fact before the arbitrator. A review of the transcript in the arbitration proceeding and in the proceeding before the superior court to vacate the award fails to support this contention. Neither the alleged fraud nor bad faith was at any time mentioned even upon the motion to reopen the proceeding before the arbitrator or in the superior court to vacate the award. Moreover, that issue was never an issue in this court in the former appeal. On the face of the arbitration proceeding it appears to be a matter of State Farm's refusal to stipulate to the uninsured status of Warner and the subsequent failure of Mary to carry her burden of proof to show Warner was not insured.

alleged that Allstate engaged in a calculated scheme to deny Rios the benefits of his uninsured motorist coverage by contriving a false set of facts through perjured evidence procured by Allstate. Rios did not attempt to vacate the decision by petitioning the superior court (see § 1286.2, fn. 4, *ante*) and the award became final. (See § 1288, fn. 7, *ante*.)

Rios appealed from a judgment of dismissal of his bad faith complaint entered upon sustaining Allstate's demurrer with leave to amend. The judgment was affirmed. The court first stated that Rios had stated a cause of action for breach of the covenant of good faith and fair dealing but that the plaintiff could not pursue the action because to permit him to do so would undermine the doctrine of finality of judgments.

The court in *Rios* recognized the principles we have enumerated herein.[9] Nevertheless, the court held that because Rios did not pursue his remedy before the superior court by a motion to vacate the decision pursuant to section 1286.2, subdivision (a) (see fn. 4, *ante*), he was precluded from proceeding in the bad faith action. The court stated: "We need not resolve that issue here, however, because plaintiff seeks redress by way of an independent bad faith cause of action without first availing himself of the statutory procedure for setting aside an arbitration award for 'corruption, fraud or other undue means.' . . . Plaintiff's action represents nothing more than an attempt to circumvent the rule that equitable relief will not be granted against a final judgment infected with intrinsic fraud. [Citations.]" (*Rios* v. *Allstate Ins. Co., supra,* 68 Cal.App.3d at p. 819.)

We respectfully disagree with the *Rios* court's conclusion and the extension of the doctrines of finality of judgments and res judicata that it represents. First, plaintiffs' bad faith cause of action is not a collateral attack upon the arbitrator's award as it is not directed toward directly preventing the enforcement of that award or defeating rights acquired under it. (*Estate of Wemyss* (1975) 49 Cal.App.3d 53, 58 [122 Cal.Rptr. 134]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial

---

[9]The court stated: "Technically plaintiff's bad faith cause of action may not be a collateral attack upon the arbitration award nor an attempt to relitigate the same cause of action determined in the arbitration proceeding. A collateral attack is one to prevent enforcement of a judgment or to defeat rights acquired under it. [Citations.] Because plaintiff is apparently abiding by the arbitration award and is not seeking to compel payment under the uninsured motorist provision of his policy of insurance, he is not undertaking a collateral attack. Nor is he attempting to relitigate the same cause of action adjudicated in the arbitration proceeding; plaintiff's right to recover damages for Allstate's alleged 'bad faith' was not an issue in that proceeding." (*Rios* v. *Allstate Ins. Co., supra,* 68 Cal.App.3d at p. 818.)

Court, § 5, p. 3588.) Secondly, as has been pointed out, the doctrines of res judicata or collateral estoppel and finality of judgments do not apply to plaintiffs' action. The cause of action based upon a breach of the implied covenant of good faith is not the same as the cause of action at issue in the arbitration proceeding. The determination of the arbitrator will not act as a bar to plaintiffs' bad faith suit. Furthermore, the issues in the bad faith action were not litigated in the arbitration action and we know of no authority extending the doctrine of collateral estoppel to issues which have not been raised. In this regard issues must be distinguished from factual matters or legal arguments which could have been presented but which were not. (See *Sutphin* v. *Speik* (1940) 15 Cal.2d 195 [99 P.2d 652, 101 P.2d 497]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 201, p. 3339.) The *Rios* court would improperly extend the doctrine to unraised issues. Thirdly, we have found no authority for the proposition that before the doctrines apply a party must pursue his remedy in the former action to conclusion. Applied logically, some of the language used by the *Rios* court would require every court case to be pursued through a motion for a new trial and appeal as a prerequisite to the application of the doctrines of res judicata, collateral estoppel or finality of judgments. On the contrary, the doctrines apply when the judgment becomes final, whether through passage of time or after appeal. ■ Accordingly, we cannot agree that a party to an arbitration proceeding must pursue his remedy in the superior court by way of a petition to vacate or confirm the award before the award becomes final or before it is protected by the doctrines of res judicata, finality of judgments or collateral estoppel.

This conclusion has special force in the instant case where the issues of fraud and failure to pay medical expenses are new issues which were not involved in the arbitration proceeding.

Because of the result we reach it is unnecessary to discuss appellants' argument that *Rios* is distinguishable because the fraud herein was extrinsic as distinguished from intrinsic (see *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471-473 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]) or to discuss the other issues raised by the parties.

The judgment is reversed.

Franson, J., and Zenovich, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 27, 1979.