[No. B212854. Second Dist., Div. Four. Oct. 2, 2009.]

ANDREW BUESA et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

1538

**COUNSEL**

Law Office of David W. Allor and David W. Allor for Plaintiffs and Appellants.

Rockard J. Delgadillo and Carmen Trutanich, City Attorneys, and Paul L. Winnemore, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—This is an appeal from a judgment on the pleadings in an action against the City of Los Angeles (City)[1] brought by two former Los Angeles police officers, Andrew Buesa and Michael Cardenas. Plaintiffs seek damages for a violation of their rights under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.; POBRA).[2] The gravamen of their complaint is that a perjured declaration submitted by the City deprived them of their statute of limitations defense in an administrative mandamus proceeding over their discharges. The issue is whether they may maintain this as a separate action, or whether under the doctrine of collateral estoppel it is barred by the final judgment denying their petition for administrative mandamus.

We conclude that plaintiffs' action under POBRA is barred because it constitutes an impermissible collateral attack on the mandate judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Since this matter is on appeal from a judgment on the pleadings, we take our factual summary from the allegations of the second amended complaint, which is the charging pleading.

On February 2, 2002, plaintiffs participated in the arrest of a suspect following a car and foot chase. The same day, the Los Angeles Police Department (LAPD) learned of alleged acts of misconduct by plaintiffs arising from that arrest. The next day, Sergeant Joe Losorelli, of the LAPD Internal Affairs Group, was assigned to investigate the alleged misconduct. On August 15, 2002, Losorelli met with a deputy district attorney in the Los Angeles County District Attorney's Office for the purpose of seeking a determination whether criminal charges should be filed against plaintiffs based on the February 2002 incident. Losorelli met with the deputy district attorney again on October 2, 2002, at which time he provided a copy of his investigation and witness statements. According to plaintiffs, the district attorney's office opened its criminal investigation against plaintiffs that day.

POBRA provides a one-year statute of limitations for bringing of police misconduct charges. The time runs from discovery of the misconduct. (§ 3304,

---

[1] Police Chief William J. Bratton was a named defendant in the original complaint, but he was deleted in the second amended complaint, the charging pleading. He is not a party to this appeal.

[2] Statutory references are to the Government Code unless otherwise indicated.

subd. (d).) Section 3304, subdivision (d)(1) tolls the limitations period while a criminal investigation or prosecution is pending. On December 2, 2002, Losorelli asked LAPD superiors to toll the statute of limitations against plaintiffs because of the pending criminal investigation. He asked that the period be tolled from his August 15, 2002 meeting with the district attorney's office until the conclusion of the criminal investigation. The criminal investigation was terminated on February 11, 2003, when the deputy district attorney in charge of the case elected not to seek a grand jury indictment.

Personnel complaints against plaintiffs were filed at the Los Angeles Police Commission on August 3, 2003, alleging misconduct arising from the February 2002 arrest. They were served the next day. On August 3, 2004, a board of rights found plaintiffs guilty of misconduct and recommended that they be discharged. On September 29, 2004, the chief of police adopted the recommendation that plaintiffs be terminated for failure to report the use of force against a suspect. The chief signed orders removing them from employment, effective that day.

Plaintiffs filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) on December 14, 2004, seeking review of their terminations. They alleged that Losorelli furnished a false declaration regarding tolling, which was used by defendant in responding to the petition. Allegedly, Losorelli knew that pursuant to a policy of LAPD and the district attorney's office, only the latter was authorized to open a criminal investigation against sworn personnel. According to the complaint, the district attorney's office opened the criminal investigation against plaintiffs on October 2, 2002. Plaintiffs allege: "Sergeant Losorelli knowingly and intentionally testified falsely that his investigation against plaintiffs was considered a criminal investigation from the beginning (as of February 2, 2002). Sergeant Losorelli knowingly and intentionally testified falsely that he first presented the case against plaintiffs to [the deputy district attorney] for possible criminal filing at a July 31, 2002 meeting, when this meeting actually took place on August 15, 2002."

Allegedly, with knowledge that the August 3, 2003 personnel complaints against plaintiffs were time-barred, Losorelli presented a false declaration in the mandamus action "with the intent of fraudulently extending the tolling period for criminal investigations" authorized by section 3304, subdivision (d) "and with the malicious intent to deprive plaintiffs of their rights," and further employment with the LAPD. According to plaintiffs, they discovered Losorelli's wrongful conduct on July 25, 2007, after the administrative mandamus proceeding was concluded. They do not explain the circumstances of that discovery.

Plaintiffs' petition for writ of administrative mandate was denied by the trial court. The court found the weight of evidence at the administrative hearing supported the decision to terminate plaintiffs. It identified the application of the POBRA statute of limitations as "the main legal issue in the case." The court noted that both sides had submitted documentary evidence and declarations on the limitations issue, and that no objection to this evidence was made by either side.

The trial court found: "The disciplinary action against the petitioners is not barred by the limitations provision of the POBR[A]" because of the tolling provision in section 3304, subdivision (d)(1). The court stated that charges were served on plaintiffs 18 months and two days after the alleged misconduct. It found: "The alleged misconduct was the subject of a criminal investigation that commenced on or before July 31, 2002, when an LAPD investigator met with the District Attorney regarding the matter, and which did not end until February 11, 2003, when the District Attorney decided not to ask the grand jury for an indictment because of the lack of evidence. The one-year limitation period was therefore tolled for six months and eleven days. The investigation was therefore completed and notice of charges were served upon the petitioner[s] within the twelve month period required by section 3304(d)." No appeal was filed from the denial of the petition for administrative mandate and that order is now final.[3]

Plaintiffs filed their original complaint in this separate action seeking reinstatement on September 27, 2007. They filed a first amended complaint which was the subject of a successful motion for judgment on the pleadings. The motion was granted with leave to amend. Plaintiffs' second amended complaint dropped the claim for reinstatement and, instead, sought damages against the City for violation of POBRA. City responded with a new motion for judgment on the pleadings. At the first hearing on the motion, the trial court requested additional briefing on whether perjury in a prior proceeding may be the basis for a collateral attack on the judgment. After supplemental briefing on that issue, a second hearing was held. The court found: "The gravamen of this lawsuit is an action under Government Code section 3309.5, but it's based upon plaintiffs' claim for perjury in the underlying action in the mandamus proceeding." The court observed that the weight of California authority is that perjury is not a basis for collateral attack on a judgment. It found "that since the gravamen of the complaint in this case is perjury in a prior proceeding and further based upon the principles of law that perjury in a

---

[3] Plaintiffs sued their former attorney for malpractice for promising, but failing, to appeal the denial of the writ petition. We are not informed of the outcome of that action.

prior proceeding, which is intrinsic fraud, is not grounds for collateral attack, the court is going to grant the motion for judgment on the pleadings."

Judgment was entered in favor of City. This appeal followed.

## DISCUSSION

"The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. We may also consider matters subject to judicial notice. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory. [Citation.]" (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298 [38 Cal.Rptr.3d 316].)

The issue presented is whether the action for damages under POBRA is barred by the final judgment following denial of plaintiffs' petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. Plaintiffs argue they are not collaterally attacking the mandate judgment, which is final, and therefore the doctrines of finality of judgments and collateral estoppel do not apply. Their theory is that their procedural rights under POBRA were thwarted by the alleged perjury by Sergeant Losorelli. Rather than seeking reinstatement to the LAPD, plaintiffs now seek damages for emotional distress, lost earnings and benefits (including pensions), both past and future. They also seek a civil penalty of $25,000 under section 3309.5, and costs of suit. Finally, plaintiffs seek "an order of injunctive or extraordinary relief that the court deems necessary and just to prevent such future similar actions on the part of defendants against other employees."

### A. *POBRA*

■ POBRA "sets forth a list of basic rights and protections which must be afforded all peace officers (see § 3301) by the public entities which employ them. (§ 3300 et seq.) 'It is a catalogue of the minimum rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations (§ 3301).' (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874].)" (*Gales v. Superior Court* (1996) 47 Cal.App.4th 1596,

1600 [55 Cal.Rptr.2d 460], fns. omitted.) Plaintiffs' second amended complaint alleges an action under section 3309.5, which provides a private right of action for police officers who claim a violation of their rights under POBRA.[4]

### B. Availability of POBRA Cause of Action

City argues that plaintiffs have not stated a cause of action under POBRA because the alleged perjury was committed in the administrative mandamus proceedings after plaintiffs had been discharged from the LAPD. At that point, City argues, plaintiffs were no longer peace officers as defined by section 3301. Plaintiffs respond that the purpose of POBRA would be defeated if their rights are guaranteed only up to the point of discharge.

We need not resolve whether a cause of action lies under POBRA based on a false declaration filed in an administrative mandamus proceeding because the time to challenge the declaration is in the Code of Civil Procedure section 1094.5 proceeding. A subsequent collateral attack on that basis is not allowed, as we next discuss.

### C. Finality of Adjudications

■ The California Supreme Court examined the principles underlying the finality of judgments in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*), in which it

---

[4] In pertinent part, section 3309.5 provides: "(a) It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter. [¶] . . . [¶] (c) The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter. [¶] (d)(1) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer. [¶] . . . [¶] (e) In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied . . . . If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages."

held that there is no separate tort for intentional spoliation of evidence. The court reviewed several cases that denied a tort remedy for the presentation of false evidence or suppression of evidence and observed these decisions "rest on a concern for the finality of adjudication." (*Id.* at p. 10.) *"This same concern underlies another line of cases that forbid direct or collateral attack on a judgment on the ground that evidence was falsified, concealed, or suppressed.* After the time for seeking a new trial has expired and any appeals have been exhausted, a final judgment may not be directly attacked and set aside on the ground that evidence has been suppressed, concealed, or falsified; . . . such fraud is 'intrinsic' rather than 'extrinsic.' [Citations.] Similarly, under the doctrines of res judicata and collateral estoppel, a judgment may not be collaterally attacked on the ground that evidence was falsified or destroyed. [Citations.]" (*Ibid.*, italics added.)

■ The claim that the judgment was based on forged documents or perjured testimony does not obviate the force of this policy favoring finality of judgments. As explained in *Pico v. Cohn* (1891) 91 Cal. 129 [25 P. 970], upon which the Supreme Court relied, " '[W]e think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter . . . for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive . . . . [¶] . . . [W]hen [the aggrieved party] has a trial, he must be prepared to meet and expose perjury then and there. . . . The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy.* The wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice . . . .' " (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 10–11, italics added, quoting *Pico v. Cohn, supra,* 91 Cal. 129, 133–134; accord, *United States v. Throckmorton* (1878) 98 U.S. 61, 68–69 [25 L.Ed. 93].)

## D. *Intrinsic Fraud*

■ Courts traditionally have distinguished between extrinsic and intrinsic fraud, a distinction which "is of critical importance because intrinsic fraud cannot be used to overthrow a judgment, even where the party was unaware of the fraud at the time and did not have a chance to raise it at trial." (*Pour Le*

*Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 828 [5 Cal.Rptr.3d 442].) As we have discussed, the introduction of perjured testimony is a classic example of intrinsic fraud. (See also *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634 [99 Cal.Rptr. 393], cited with approval in *Pour Le Bebe, Inc. v. Guess? Inc., supra*, 112 Cal.App.4th at p. 828.)

Plaintiffs argue these principles do not apply because their second amended complaint does not seek to invalidate the denial of the mandate petition and does not seek their reinstatement. They characterize the two actions: "The prior action litigated whether [plaintiffs] were entitled to equitable relief because inter alia the City of Los Angeles brought charges against them beyond the one year statute of limitations. The present action seeks statutory penalties and damages for a different and distinct violation of *Government Code* § 3309.5 by an employee of the City of Los Angeles." They rely on *Corral v. State Farm Mutual Auto. Ins. Co.* (1979) 92 Cal.App.3d 1004 [155 Cal.Rptr. 342] (*Corral*).

*Corral* arose out of an uninsured motorist arbitration between an insured and her insurer. The insurer refused to stipulate that the third party involved in the accident with the insured was uninsured. The arbitration was continued to allow the insured to obtain evidence that the third party was uninsured or to obtain a stipulation to that effect. When neither was obtained, counsel for the insured submitted on the evidence produced at the hearing. The arbitrator found for the insurer. Six weeks later the insured sought to reopen the arbitration based on a new declaration from the third party stating that he was uninsured. The request was denied on the ground the arbitrator lacked authority to grant the relief requested. (*Corral, supra*, 92 Cal.App.3d at pp. 1007–1008.) The insured's motion in the superior court to vacate the arbitration award was denied as untimely, a ruling that was affirmed by the Court of Appeal. (*Id.* at p. 1008.)

The insured then filed a separate action against the insurer for breach of the duty of good faith and fair dealing. In it, she alleged that at all times the insurer knew that the third party was uninsured, and fraudulently contended at the arbitration hearing that he was insured. In opposition to the defense motion for summary judgment, counsel for the insured submitted his declaration in which he stated that a claims manager for the insured had told him before the arbitration that the insurer would treat the claim as an uninsured motorist case. The attorney declared that, in reliance on these assurances, he made no effort to obtain evidence of the third party's lack of insurance coverage. (*Corral, supra*, 92 Cal.App.3d at pp. 1008–1009.)

The *Corral* court rejected the insurer's argument that the bad faith action was barred by either res judicata or the policies underlying finality of

judgments. (*Corral, supra*, 92 Cal.App.3d at p. 1009.) Instead, it held that each proceeding was based on a different claim of right: the arbitration proceeding was brought to recover benefits under the uninsured motorist provision of the insurance contract; the bad faith cause of action was not based on facts surrounding the automobile collision or the terms of the insurance policy, but on bad faith (refusal to acknowledge that the third party motorist was uninsured) committed after the collision. The court concluded that the bad faith claim constituted a different cause of action, and so was not barred by collateral estoppel. (*Id.* at pp. 1011–1012.) It held that the bad faith action was "not a collateral attack upon the arbitrator's award as it is not directed toward directly preventing the enforcement of that award or defeating rights acquired under it." (*Id.* at p. 1013.)

The court in *Corral* acknowledged a then recent case that reached a different result, but disagreed with its holding. The case was *Rios v. Allstate Ins. Co.* (1977) 68 Cal.App.3d 811 [137 Cal.Rptr. 441], which held that the doctrine of finality of judgments barred a separate action for bad faith alleging that in an arbitration between insurer and insured, the insurer had presented false evidence and testimony. (*Corral, supra*, 92 Cal.App.3d at pp. 1012–1014.) But *Rios* (and several other decisions) were cited with approval by our Supreme Court in *Cedars-Sinai, supra*, 18 Cal.4th at page 10. Of course, the *Corral* court did not have the benefit of the Supreme Court's reasoning in *Cedars-Sinai*, which was decided some 19 years later.

Plaintiffs do not cite or discuss *Rios*, but argue that *Corral* should apply because in that case, as in this one, the facts giving rise to the second action occurred during the first proceeding. They contend: "As demonstrated in *Corral*, it is the extraordinary obligations of the defendant that allows the second action to proceed. In that case, it was the insurance company's obligation of good faith and fair dealing. . . . Similarly, in the present case the City of Los Angeles cannot get away with its conduct at the hearing on the writ where it presented the perjurous [*sic*] declaration because it had an independent obligation not to violate [plaintiffs'] rights under *Government Code*, § 3309.5."

Here, to prevail in their action for damages, plaintiffs had to prove a violation of POBRA based upon defendant's reliance on a perjured declaration to show that the tolling of the time to file disciplinary actions lasted long enough to render their discharges timely. This goes to the heart of the trial court's finding in the mandate proceeding.

To the extent that *Corral* stands for the proposition that the finality of judgments doctrine does not apply to a separate bad faith action arising from the presentation of false or perjured testimony in an earlier proceeding, we

disagree, and instead follow *Cedars-Sinai, supra,* 18 Cal.4th 1 and *Rios v. Allstate Ins. Co., supra,* 68 Cal.App.3d at pages 818–819.

Plaintiffs also rely on *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331 [76 Cal.Rptr.3d 649] (*Miller*). In that case, the executor of an estate hired a law firm to represent her in connection with her duties. At the conclusion of the probate matter, the firm requested and was awarded its fees except for one category which the probate court found to involve work for the executor in her individual capacity. The firm did not appeal that decision. Instead, it filed a new action seeking quantum meruit recovery of the denied fees directly from the client. The trial court held the action was barred by the final judgment in the probate case. The Court of Appeal reversed. Significantly, it found that the probate court did not decide that the law firm was not entitled to the additional fees, but only that the fees were not payable out of the estate. (*Id.* at p. 1341.) As the *Miller* court explained, the probate court never ruled on the firm's entitlement to fees directly from its client, and therefore there was no basis for collateral estoppel. (*Id.* at p. 1343.)

■ The case before us is quite different. The court ruled on the tolling issue in the mandate proceeding. Indeed it was the central question in the case. " 'Collateral estoppel precludes the relitigation of an issue only if (1) the issue is identical to an issue decided in a prior proceeding; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom collateral estoppel is asserted was a party to the prior proceeding or in privity with a party to the prior proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].)' (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82 [70 Cal.Rptr.3d 817].)" (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1048–1049 [79 Cal.Rptr.3d 822].) That describes the present case.

■ Because the tolling issue was actually litigated in the mandate proceeding, a new claim based on the allegedly perjured declaration is a collateral attack on the mandate decision. Perjured testimony cannot be the basis for a separate proceeding. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 10–11.)

In light of our conclusion, we need not and do not address City's other arguments.

## DISPOSITION

The judgment is affirmed. City is to have its costs on appeal.

Willhite, J., and Manella, J., concurred.