**Daryl E. PORN, Plaintiff, Appellant,**

**v.**

**NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Defendant, Appellee.**

**No. 95–2197.**

United States Court of Appeals, First Circuit.

Heard April 5, 1996.

Decided Aug. 23, 1996.

Catherine R. Connors, Portland, ME, with whom Scott T. Maker and Pierce, Atwood,

Scribner, Allen, Smith & Lancaster, were on brief for appellant.

Constance L. Epstein, Hartford, CT, with whom John R. Fitzgerald, Matthew D. Gilmond, Howard, Kohn, Sprague & Fitzgerald, Hartford, CT, Harold J. Friedman, Elizabeth A. Germani, Jonathan M. Dunitz, and Friedman & Babcock, Portland, ME, were on brief for appellee.

Before SELYA, STAHL, and LYNCH, Circuit Judges.

STAHL, Circuit Judge.

Having successfully sued his insurer, National Grange Mutual Insurance Company ("National Grange"), six months earlier for breach of contract in refusing to pay his claim for underinsured motorist benefits incurred during a July 1990 car accident, plaintiff-appellant Daryl E. Porn brought this diversity action in Maine's federal district court against National Grange seeking additional damages for its alleged mishandling of his underinsured motorist claim. The district court granted summary judgment in favor of National Grange based on the doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion), concluding that an issue underlying one of Porn's claims had been decided in the earlier proceeding and that all of Porn's claims could have been raised therein. Porn appeals the district court's summary judgment order. Finding no error, we affirm.

## I.

### Background & Prior Proceedings

On July 17, 1990, Porn, a Connecticut resident, was involved in an automobile accident in Portland, Maine, when motorist Lori Willoughby sped through a stop sign and broadsided his vehicle. Because his damages exceeded Willoughby's $20,000 policy limit, Porn made a claim to National Grange under his automobile policy seeking recovery from the underinsured motorist indorsement to the policy. For reasons not apparent in the

record, National Grange refused to pay the claim.

Disgruntled by this refusal, Porn wrote to National Grange accusing it of bad faith in handling his claim and threatening legal action. Porn sent copies of his letter to the insurance commissioners of Connecticut and Massachusetts. National Grange, unimpressed, remained steadfast in its refusal to pay, and in November 1993, Porn filed suit against National Grange in Maine's federal district court for breach of the insurance contract ("first action").

Because Porn's policy with National Grange required a finding of legal liability on the part of the underinsured motorist as a condition precedent to the payment of benefits, the two-day trial before the magistrate judge[1] focused on the question of Willoughby's negligence and Porn's contributory negligence. Following the completion of the evidence, the magistrate judge entered judgment as a matter of law for Porn on the issue of contributory negligence, and the jury returned a verdict for Porn, finding that Willoughby's negligence had caused him $400,000 worth of damages. After reducing the jury's award to reflect Porn's $300,000 underinsured motorist policy limit and appropriate set-offs, the magistrate judge entered judgment for Porn in the amount of $255,314.40. The magistrate judge denied Porn's motion for prejudgment interest, finding that while Maine law allows prejudgment interest in excess of the policy limit where the insurer acted in bad faith and needlessly prolonged the litigation, Porn had presented no evidence that National Grange exhibited such behavior.

Six months later, Porn commenced this action against National Grange in Maine's federal district court ("second action"). This time Porn alleged that National Grange's conduct in handling his underinsured motorist claim constituted breach of the covenant of good faith, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Connecticut Unfair Insurance Practices Act and the Con-

---

**1.** Under Fed.R.Civ.P. 73, the parties consented to the magistrate judge, rather than the district judge, conducting the jury trial.

necticut Unfair Trade Practices Act. National Grange moved for summary judgment, arguing that the judgment in the first action precluded Porn from bringing the second action. The district court accepted that argument and granted summary judgment in favor of National Grange on the grounds that (1) one aspect of Porn's bad-faith claim was barred by issue preclusion and (2) all of Porn's claims were barred by claim preclusion.

In reaching its first holding, the district court explained that the magistrate judge's decision not to award Porn prejudgment interest was based in part on his finding that Porn had presented no evidence to suggest that National Grange acted in bad faith and needlessly prolonged the litigation. Accordingly, the court concluded that the question of National Grange's alleged bad-faith conduct in litigating the first action was raised and decided in the first action, and, therefore, to the extent Porn's bad-faith claim involved National Grange's conduct during the first action, it was barred by issue preclusion.

In reaching its broader holding that all five of Porn's claims were barred by claim preclusion, the district court reasoned that once Porn chose to bring the first action against National Grange for breach of contract, he was required to raise all his claims arising from the breach or else forfeit the right to do so. Because it found that Porn's five tort and statutory claims, like the earlier breach of contract claim, involved National Grange's obligations arising under the insurance policy, the district court concluded that they should have been brought in the first action and therefore were barred by claim preclusion from being raised in the second action.

## II.

### Analysis

Porn appeals the district court's grant of summary judgment in favor of National Grange, arguing that the judgment in the first action for breach of contract does not preclude his bad-faith, emotional distress, and statutory unfair practices claims (collectively "bad-faith claim") against National Grange in this action. Specifically, Porn argues that (1) the facts relevant to his bad-faith claim are separate from those relevant to his contract claim, (2) the bad-faith facts do not form a convenient trial unit with the contract facts, (3) treatment of both sets of facts as a unit does not conform to the parties' expectations, and (4) it was inequitable to apply the res judicata bar where, as here, the insurer's conduct in the contract litigation forms part of the bad-faith action.[2] After reciting the standard of review and setting forth the governing res judicata law, we consider each argument in turn.

We review a grant of summary judgment *de novo*, under the same standards that govern the district court, to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The applicability of the doctrine of res judicata is a question of law subject to plenary review. *Wolf v. Gruntal & Co.*, 45 F.3d 524, 527 (1st Cir.1995).

 Because the judgment in the first action was rendered by a federal court, the preclusive effect of that judgment in the

---

2. All of these arguments attack the district court's claim preclusion holding. Porn also makes arguments challenging the district court's conclusion that the portion of his bad-faith claim relating to National Grange's conduct in the first action was barred by issue preclusion. However, when Porn commenced the first action, he knew that National Grange had neither settled his benefits claim despite overwhelming evidence that Willoughby alone caused the accident nor conducted an independent investigation into the cause of the accident in an attempt to offset Porn's evidence of Willoughby's wrongdoing. Thus, we conclude that Porn could have raised a bad-faith claim based on this evidence of National Grange's litigation conduct in the first action and could also have used National Grange's ensuing litigation conduct as further evidence of that claim in the same action. The claim therefore is barred by the doctrine of res judicata (claim preclusion), *see infra*. Accordingly, we do not consider Porn's arguments regarding issue preclusion.

instant diversity action is governed by federal res judicata principles. *See Johnson v. SCA Disposal Servs., Inc.*, 931 F.2d 970, 974 (1st Cir.1991) (noting in addition that the application of federal res judicata principles allows federal courts to define the effect of their own judgments); *see also Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 582–83, 583 n. 7 (1st Cir.1995). Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). For a claim to be precluded, the following elements must be established: (1) a final judgment on the merits in an earlier action, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity between the parties in the two suits. *See Apparel Art*, 48 F.3d at 583; *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir.1994). Because there is no dispute that the first and third elements of the test are established, we focus on the second element: whether the causes of action in the two lawsuits are sufficiently identical.

In defining the cause of action for res judicata purposes, this circuit has adopted the "transactional" approach of the Restatement (Second) of Judgments. *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). Under this approach, a valid and final judgment in the first action will extinguish subsequent claims " 'with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *Id.* (quoting Restatement (Second) of Judgments § 24 (1982)). We determine what factual grouping constitutes a "transaction" pragmatically, giving weight to such factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Restatement § 24; *see also Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 7 (1st Cir.1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). These factors, however, are merely sugges-tive; they are not intended to be exhaustive, nor is any one factor determinative. *See* Restatement § 24 cmt. b; *Gonzalez*, 27 F.3d at 756. Finally, in making this determination, we are mindful that a single transaction may give rise to a multiplicity of claims, *Gonzalez*, 27 F.3d at 755, and recognize that "the mere fact that different legal theories are presented in each case does not mean that the same transaction is not behind each," *Manego*, 773 F.2d at 6.

## A. Consideration of the Restatement Factors

■ With that background, we inquire whether the causes of action asserted in the first and second suits are sufficiently identical, focusing on the three Restatement factors.

### 1. Relation of the Facts in Time, Space, Origin, or Motivation

The first Restatement factor asks whether the facts underlying the breach of contract and bad-faith claims are related in time, space, origin, or motivation, *i.e.*, whether they arise out of the same transaction, seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis. *See Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir.), *cert. denied*, 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991). In this case, our answers to these questions lead us to conclude that the facts underlying the two claims are close-ly related.

First, we find that both the bad-faith claim and the contract claim derive from the same occurrence: National Grange's refusal to pay Porn the proceeds of his underinsured motorist policy for the July 17, 1990, accident. Second, although the two claims present different legal theories, one sounding in contract and the other in tort, they both seek redress for essentially the same basic wrong. For instance, Porn's contract action sought redress for National Grange's refusal to pay the policy proceeds, while his bad-faith action sought redress for its unreasonable refusal to pay the proceeds, *see Buckman v. People Express, Inc.*, 205 Conn. 166, 530 A.2d 596,

599 (1987). Third, a comparison of the two complaints illustrates that the two claims rest on a similar factual basis. Both complaints, in their factual allegations, outline the circumstances of the accident, the particulars of the insurance policy, and National Grange's conduct in refusing to pay. In sum, the facts underlying the two claims are closely related in time, space, origin, and motivation.[3]

Porn expends considerable effort characterizing the instant action as arising out of a transaction separate from that giving rise to the first action. In particular, Porn maintains that the bad-faith action stems from National Grange's conduct in handling his insurance claim, whereas the contract action stems from the circumstances surrounding the car accident. Porn's definition of the two transactions out of which the claims arise, however, is artificially narrow. For instance, the contract claim arises out of more than the car accident alone. It arises out of the accident in conjunction with National Grange's refusal to pay under the policy. Indeed, without the refusal to pay, no contract breach could exist. Similarly, the factual basis of Porn's bad-faith claim cannot be limited to National Grange's conduct in handling Porn's insurance claim. In this case, the facts of the car accident are also probative of National Grange's reasonableness in

refusing to pay Porn's claim. For instance, if, as Porn suggests, the facts of the accident present a clear picture that Willoughby was the legal cause of the accident and Porn was not contributorily negligent, National Grange would have had less reason to contest the claim and therefore its refusal to pay appears less reasonable.[4]

Admittedly, each legal theory relies more heavily on some of the underlying facts than others. The accident facts, for example, will likely receive more emphasis in proving the contract claim, while the facts regarding National Grange's conduct in handling Porn's insurance claim will be more focal in proving the bad-faith claim. However, the Restatement makes clear that merely because two claims depend on different shadings of the facts or emphasize different elements of the facts, we should not color our perception of the transaction underlying them, creating multiple transactions where only one transaction exists. Restatement § 24 cmt. c. By focusing exclusively on the facts most critical to each claim, Porn has ignored the other facts underlying each claim. Accordingly, we reject Porn's grouping of the facts underlying the two claims into separate transactions.

### 2. Trial Convenience

The second Restatement factor directs us to determine whether the facts underlying

---

**3.** A majority of the courts that have considered this question, i.e., whether the facts underlying a breach of insurance contract claim and a bad-faith claim are sufficiently related for purposes of res judicata, also have concluded that both claims arise out of the insurer's refusal to pay the insured the proceeds of the policy. *See, e.g., McCarty v. First of Ga. Ins. Co.*, 713 F.2d 609, 612 (10th Cir.1983) (applying Oklahoma res judicata law); *Duhaime v. American Reserve Life Ins. Co.*, 200 Conn. 360, 511 A.2d 333, 334 (1986); *Chandler v. Commercial Union Ins. Co.*, 467 So.2d 244, 250 (Ala.1985); *Hubbell v. Trans World Life Ins. Co.*, 50 N.Y.2d 899, 430 N.Y.S.2d 589, 590, 408 N.E.2d 918, 919 (1980); *Stone v. Beneficial Standard Life Ins. Co.*, 273 Or. 594, 542 P.2d 892, 894 (1975). Of the courts holding otherwise, i.e., that the facts underlying the contract and bad-faith claims are unrelated, most applied state-law theories of res judicata that differ significantly from the federal res judicata principles that govern this case. *See, e.g., Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir.1991) (applying Texas res judicata law); *Robinson v. MFA Mut. Ins. Co.*, 629 F.2d 497, 501–02 (8th Cir.1980) (applying Arkansas's

"primary rights" theory of res judicata); *Corral v. State Farm Mut. Auto. Ins. Co.*, 92 Cal.App.3d 1004, 155 Cal.Rptr. 342, 345 (1979) (applying "primary rights" theory); *but see Rios v. Allstate Ins. Co.*, 68 Cal.App.3d 811, 137 Cal.Rptr. 441, 445–46 (1977) (reaching contrary conclusion under "primary rights" theory).

**4.** Porn's argument that the facts underlying the bad-faith and contract claims are not related in time is similarly unpersuasive. Porn argues that the facts underlying the bad-faith action go to National Grange's handling of the claim *after* the car accident, while the facts underlying the contract action go to the accident itself. However, as we explained above, the factual basis of the contract action is formed by more than just the accident; it also includes National Grange's refusal to pay, and that refusal occurred after the accident. Therefore, the facts underlying the contract action cannot be limited to the accident itself but extend to the time period after the accident as well, thereby minimizing any time differential between the facts underlying the two claims.

the contract and bad-faith claims form a convenient trial unit. This factor, aimed at conserving judicial resources, provides that where the witnesses or proof needed in the second action overlap substantially with those used in the first action, the second action should ordinarily be precluded. Restatement § 24 cmt. b. We conclude that Porn's bad-faith claim would use much of the same evidence produced in the first action for breach of the insurance contract, and therefore it would have been convenient and efficient for the district court to have heard the two claims in the same action.

Testimony and exhibits about the circumstances of the accident are relevant to both the contract and bad-faith claims. To establish that National Grange breached the insurance policy in not paying his claim, Porn had to prove that Willoughby's negligence caused the accident and that he was not contributorily negligent. Accordingly, in the first action, Porn presented evidence detailing the circumstances of the accident. This evidence would likely have been repeated in a second action for bad faith, as Porn would have sought to portray the accident facts as so plainly establishing Willoughby's negligence that National Grange had no credible reason for refusing to pay his claim.

The evidence in the contract action and the second action would also overlap as to the terms of Porn's underinsured motorist policy and National Grange's refusal to pay his claim. To prove breach of contract, Porn had to establish that National Grange refused to pay his claim where the terms of the policy so required. Likewise, the reasonableness of National Grange's refusal to pay, i.e., whether it acted in bad faith, depends on what the policy required.

Rather than addressing the degree to which the evidence supporting each claim overlaps, Porn challenges the convenience of bringing the claims together on two other grounds. First, Porn argues that evidence relevant to the bad-faith claim, specifically evidence of the amount of insurance available

and the fact of settlement offers and negotiations, would prejudice the insurer's defense of the contract claim, and therefore the two claims do not form a convenient trial unit. However, we agree with the district court that any potential prejudice could be resolved by bifurcating the trial. With bifurcation, the evidence common to both claims, which was considerable, could have been presented at once and not "in separate lawsuits commenced at a distance of months or years." *Porn v. National Grange Mut. Ins. Co.*, No. 95–140–P–H, 1995 WL 626374, at *3 (D.Me. Sept. 27, 1995).

■ Second, Porn argues that he had to procure a judgment that National Grange breached the insurance contract before the cause of action for bad faith could accrue and therefore the bad-faith and contract claims could not be joined in the same action. Porn bases this contention on an assumption that, although a Connecticut court has yet to decide this issue, it would follow jurisdictions like Florida and require a judgment of contract breach as a condition precedent to the pursuit of a bad-faith claim. *See, e.g., Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289, 1290 (Fla.1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.").[5] The district court correctly observed, however, that the Connecticut Supreme Court rejected this contention in *Duhaime v. American Reserve Life Ins. Co.*, 200 Conn. 360, 511 A.2d 333, 334–35 (1986). Invoking the doctrine of res judicata, the Connecticut Supreme Court held that Duhaime's earlier action for breach of the insurance policy barred a subsequent action for bad faith. *Id.* In so holding, the court implicitly acknowledged that a bad-faith action can accrue without a separate judgment of contract breach. Although *Duhaime* involved disability insurance and the instant case involves underin-

---

**5.** Porn's reliance on *McAllaster v. Bruton,* 655 F.Supp. 1371, 1374 (D.Me.1987), as additional support for this proposition is sorely misplaced. *McAllaster* held that an insurer could not be required to pay uninsured motorist benefits with-

out a prior judgment that the uninsured motorist was liable. *Id.* at 1374–75. *McAllaster* does not address whether a judgment finding breach of the insurance policy is a condition precedent to pursuit of a bad-faith claim.

sured motorist insurance, we see nothing unique about underinsured motorist insurance that would preclude *Duhaime*'s holding from governing here.[6]

### 3. Parties' Expectations

The final Restatement factor is whether treating the underlying facts as a trial unit conforms to the parties' expectations. For the following reasons, we conclude that it does.

When he brought his contract suit in November 1993, Porn knew the facts necessary for bringing a bad-faith claim. He knew that National Grange had refused to pay; he knew its alleged reasons for so refusing; and he knew the extent of the delay in payment attributable to the refusal. Therefore, because the two claims arose in the same time frame out of similar facts, one would reasonably expect them to be brought together. *See* 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4407, at 56 (1981) ("Defendants may reasonably demand that disposition of the first suit establish repose as to all matters that ordinary people would intuitively count part of a single basic dispute."). Indeed, in February 1993, nine months before filing the first action, Porn wrote a letter to National Grange in which he made a demand for his policy proceeds and concomitantly threatened to sue for bad faith. In light of this letter, it would not have been unreasonable for National Grange to expect that any subsequent lawsuit that Porn initiated would include claims for both breach of contract and bad faith. Finally, bringing related claims together is arguably more conducive to settlement and therefore, at least in this case, may have had some pragmatic appeal.

In sum, applying the Restatement's transactional test to this case, we conclude that the two lawsuits involved sufficiently identical causes of action. Because the cause of action should not have been split into two

lawsuits, Porn's bad-faith claim is barred by claim preclusion.

### B. Equitable Exception

As his final argument, Porn contends that even if we find that res judicata applies, equity demands its suspension in this case. Specifically, Porn argues that because National Grange's decision to proceed to judgment in the contract action with no evidence to support its defense ("litigation conduct") is probative of bad faith, the full nature of National Grange's bad-faith tort was not revealed until judgment was entered in the contract action. Therefore, Porn argues, it would be premature and unfair to require him to bring his bad-faith claim together with his contract claim.

█ The Supreme Court has counselled us to adhere to traditional principles of res judicata and not to make any "ad hoc determination of the equities in a particular case." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (refusing to condone an exception to an application of res judicata that would bar relitigation of an unappealed adverse judgment where other plaintiffs in similar actions against common defendants successfully appealed the judgments against them). In a post-*Moitie* decision, however, this court has suggested that an " 'occasional exception' to claim preclusion" may still exist in instances of " 'unusual hardship.' " *Kale,* 924 F.2d at 1168 (quoting *Rose v. Town of Harwich,* 778 F.2d 77, 82 (1st Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986)); *but see Johnson v. SCA Disposal Servs., Inc.,* 931 F.2d 970, 977 (1st Cir.1991) (citing *Moitie* for the proposition that "we cannot relax the principles of claim preclusion even if we find that the equities cry out for us to do so"). Assuming *arguendo* that *Moitie* did not foreclose the possibility of an equitable exception, we find that, in the context of this case, requiring the bad-faith claim to be brought in the first action

---

**6.** In all events, in a bifurcated trial such as the district court envisioned, *see supra,* the jury would first be asked to determine the breach of contract claim. Only if the insured prevailed on that claim would the second (bad-faith) phase of

the trial transpire. Thus, the insured would have to secure a finding that the insurer breached the contract before he could recover on his bad-faith claim. We do not think that the Connecticut Supreme Court would require more.

creates no unusual hardship for Porn and therefore the exception does not apply.

First, we challenge Porn's assumption that requiring the two claims to be brought together would necessarily preclude as support for the bad-faith claim any evidence about National Grange's decision to proceed to judgment in the contract action with no evidence to support its defense. Had the contract and bad-faith claims been brought together, the district court would likely have bifurcated the trial into two phases. By the time of the bad-faith phase of the trial, the contract phase would already have been completed and Porn would know both the quality of evidence National Grange presented to defend the contract claim and that the magistrate judge had granted judgment as a matter of law for Porn on the issue of contributory negligence. Accordingly, we see nothing that would have prevented Porn from presenting this evidence in the bad-faith phase of the trial and arguing to the jury that National Grange's refusal to settle the contract action despite insufficient evidence of a meritorious defense was more evidence of its bad faith.[7]

Moreover, assuming *arguendo* that Porn's assumption was correct and that at the time he brought the contract action he was unaware of the litigation conduct that would occur therein, we nonetheless conclude that Porn was aware of other conduct by National Grange sufficient to support a bad-faith claim. Indeed, of the ten factual allegations supporting Porn's bad-faith complaint, nine were known to Porn at the time he instituted the first action. For instance, the second complaint alleged that National Grange failed to act on the claim for nine months; failed to make an offer on the claim for sixteen months; failed to allow Porn to settle with Willoughby's carrier for the available liability proceeds for two years; justified delays with the possibility of other insurance coverage when it knew no such insurance existed; made Porn investigate the possibility of other coverage; failed to investigate the claim; re-

peatedly lied to Porn about the policy's terms; and instructed its claims personnel to withhold helpful information about the policy from Porn. Because the events underlying these allegations had occurred by the time Porn brought his first action, we find that Porn had ample opportunity to litigate the bad-faith claim therein, *see Gonzalez*, 27 F.3d at 758 (holding that for claim preclusion to apply, a litigant first must have had a full and fair opportunity to litigate her claim), and his asserted inability to present evidence of National Grange's litigation conduct as additional support for his bad-faith claim does not present an unusual hardship.

### III.

### *Conclusion*

For the reasons stated above, we *affirm* the district court's grant of summary judgment in favor of National Grange.

---

7. Even if the trial had not been bifurcated and Porn did not yet know that the magistrate judge would grant judgment as a matter of law on the issue of contributory negligence, Porn still could have pointed to National Grange's lack of evidence of contributory negligence and argued that National Grange's refusal to settle the contract case with such a meager defense was more evidence of its bad faith. *See supra* note 2.