Rosita ESTERAS, Plaintiff,

v.

**SAN JUAN BAUTISTA MEDICAL CENTER, INC., et al., Defendants.**

Civil No. 08–1209 (GAG/BJM).

United States District Court, D. Puerto Rico.

June 9, 2009.

142

Manuel Duran–Rodriguez, Manuel Duran Law Office, San Juan, PR, for Plaintiff.

Luis R. Perez–Giusti, Mariel Y. Haack–Pizarro, Adsuar Muniz Goyco Seda & Perez Ochoa PSC, San Juan, PR, for Defendants.

### OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Before the court is the motion of defendants San Juan Bautista Medical Center, Inc. and Escuela de Medicina San Juan Bautista, Inc. (collectively, "the Center") for summary judgment on plaintiff's claim under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161–1169 (Docket No. 12), and plaintiff's opposition (Docket No. 21). The case was referred to me, and the parties have consented to proceed before a magistrate judge. (Docket No. 10). For the

reasons that follow, defendants' motion for summary judgment is **granted.**

## FACTUAL BACKGROUND

The following facts, taken from the evidence on record, are presented in the light most favorable to the plaintiff as the non-moving party, and are either undisputed or conclusively supported by the evidentiary record.[1]

Plaintiff Rosita Esteras was hired as the Executive Director of the San Juan Bautista Medical Center in February 2001. (Docket No. 13, Exh. 1). The Center fired Esteras in February 2005, claiming violations of rules, policy, and orders of the Center's Board of Trustees. (Docket No. 13, Exh. 2). Esteras sued the Center in this court in August 2006 ("the 2006 suit"), claiming violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, Puerto Rico Law No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146– 151 ("Law 100"), and Law No. 80 of May 30, 1976, 29 L.P.R.A. §§ 185a–185m ("Law 80"). (Docket No. 13, Exh. 3). After discovery in the 2006 suit, Esteras and the Center settled, and on February 15, 2008, Esteras moved to voluntarily dismiss that suit. (Docket No. 13, ¶ 6; Docket No. 13, Exh. 4).[2] The court entered final judg-ment dismissing the case with prejudice on Feb. 29, 2008. *See Esteras v. San Juan Bautista Medical Center, Inc.,* Civil No. 06–1857(RLA) (D.P.R. Feb. 29, 2008).[3] Esteras filed the present action (the "2008 suit") on the same day she voluntarily dismissed the 2006 suit. (Docket No. 1). In her complaint in the instant case, Ester-as raised a single cause of action, alleging violations of COBRA, 29 U.S.C. §§ 1161– 69. (*Id.*). Esteras also filed an action in the Court of First Instance of the Commonwealth of Puerto Rico, Bayamón Part (the "Puerto Rico suit") (Docket No. 13, Exh. 6). In its answer, the Center admitted that it did not provide Esteras with COBRA notices, but alleged that Esteras was terminated for gross misconduct. (Docket No. 3, p. 2).

## DISCUSSION

In its motion for summary judgment, the Center argues that it is entitled to judgment in this case under the principle of *res judicata,* or claim preclusion, based on the voluntary dismissal of the 2006 case. There are no genuine issues of material fact as to the issue, so the question before the court is whether the Center is entitled to judgment as a matter of law on *res judicata* principles.

1. In determining what facts are supported by the evidentiary record, Local Rule 56(e) applies:

   Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

2. The record does not include a written settlement agreement.

3. Neither party submitted the 2006 suit's final judgment to the record. However, " '[i]t is well accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matter at hand.' " *Maher v. Hyde,* 272 F.3d 83, 86 n. 3 (1st Cir.2001) (quoting *Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990)); *see also Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir.1983) (finding it proper for a district court to take judicial notice of a state court judgment for *res judicata* purposes).

## I. Standard of Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining if a material fact is "genuine," the court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*; *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir.1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." *Crawford–El v. Britton*, 523 U.S. 574, 600 n. 22, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed.R.Civ.P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir.1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The parties must rely upon admissible evidence to support or oppose summary judgment. Fed.R.Civ.P. 56(e); *Hoffman v. Applicators Sales and Serv., Inc.*, 439 F.3d 9, 14 (1st Cir.2006). Of course, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." *Leary*, 58 F.3d at 751.

## II. Legal Analysis

■ "Federal law determines the preclusive effect of a judgment previously entered by a federal court. ... [A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d 3, 8 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). For one suit to preclude another, there must be (1) a final judgment on the merits, (2) sufficient identicality between the causes of action, and (3) sufficient identicality between the parties. *Coors Brewing Co.*, 562 F.3d at 8. A voluntary dismissal with prejudice "is ordinarily deemed a final judgment that satisfies the *res judicata* criterion." *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir.1998). However, *res judicata* cannot preclude a claim that could not have been raised in the first action. *See Iannochino v. Rodolakis (In re Iannochino)*, 242 F.3d 36, 48 (1st Cir.2001).

■ Esteras correctly argues that she could not have included the COBRA cause of action in the Puerto Rico suit because of exclusive federal jurisdiction over the remedy she seeks. (Docket No. 21, ¶ 2); *see* 29 U.S.C. 1132(e)(1). However, the question is whether she could have included it in the 2006 suit, which was brought in federal court. Both the ADEA and COBRA causes of action arise under federal law, so this court would have subject-matter jurisdiction over both claims. Moreover, Esteras's COBRA cause of action

accrued either 14 or 44 days after her termination (*i.e.*, March 1, 2005, or March 31, 2005), depending on whether the Center was also the health plan administrator under COBRA. *See Gonzalez Villanueva v. Warner Lambert*, 339 F.Supp.2d 351, 358–59 (D.P.R.2004). The 2006 suit was brought well after the COBRA cause of action had accrued. Thus, there is no procedural reason why the two causes of action could not have been brought together in the 2006 suit.

The first and third elements of the claim preclusion test are easily satisfied here. First, the voluntary dismissal with prejudice is a final judgment, satisfying the first element. Next, the parties in the 2006 suit and the 2008 suit are identical, satisfying the third element. Esteras does not dispute either the finality of the 2006 judgment or the identicality of the parties in the 2008 suit. Therefore, only the second element, sufficient identicality between the causes of action, requires further analysis.

In determining whether sufficient identicality exists between the causes of action brought in the two lawsuits at issue here, it is to instructive to first compare the elements of the claims brought in each case.

### A. Claims in 2006 Suit

The 2006 suit alleges violations of the ADEA, Law 100, and Law 80. Each cause of action will be discussed in turn.

The ADEA makes it illegal for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where an employee lacks direct evidence that the employer's actions were motivated by age animus, the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), dictates the progression of proof. *Bennett v. Saint–Gobain Corp.*, 507 F.3d 23, 30 (1st Cir.2007); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991). In this framework, the first step involves the employee's prima facie case. "To accomplish this modest task, the plaintiff must adduce evidence showing four facts: (i) that he is a member of the protected group; that is, that he was at least forty years of age when dismissed from his employment; (ii) that his job performance met or exceeded his employer's legitimate expectations; (iii) that his employer actually or constructively discharged him; and (iv) that his employer had a continuing need for the services that he had been rendering." *Bennett*, 507 F.3d at 30; *see also Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000); *Mesnick*, 950 F.2d at 823. Once the plaintiff makes out his prima facie case, the burden of production (but not the burden of proof) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the dismissal. *Bennett*, 507 F.3d at 30–31; *see Mesnick*, 950 F.2d at 823. If and when the defendant satisfies its burden of production, the plaintiff no longer can rest on the initial inference of discrimination but, rather, must show that the defendant's articulated reason is pretextual. *Bennett*, 507 F.3d at 31.

Law 100 differs from the ADEA in that once the plaintiff has established a prima facie case, the employer has the burden of showing by a preponderance of the evidence that it had good cause for its action. *Velásquez–Fernández v. NCE Foods, Inc.*, 476 F.3d 6, 11 (1st Cir.2007). However, "if the employer can establish good cause, the employee is faced with the same burden of persuasion as an employee bringing suit under the ADEA." *Id.*

Law 80 prohibits the discharge of employees "without good cause." *Id.* at 13. "Good cause" is defined in the statute, and includes several provisions related to the employee's performance and conduct:

(a) That the worker indulges in a pattern of improper or disorderly conduct.

(b) The attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

(c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

29 L.P.R.A. § 185b. Additionally, "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." *Id.*

### B. COBRA Claims in Instant Suit

"COBRA requires that an employer provide an employee and other 'qualified beneficiaries' with the option of electing continued coverage under the same terms of the employer's health plan after the occurrence of a 'qualifying event' which would otherwise end an employee's health insurance coverage." *González Villanueva,* 339 F.Supp.2d at 358 (citing 29 U.S.C. § 1161). Termination of employment is a qualifying event, unless it is "by reason of such employee's gross misconduct." 29 U.S.C. § 1163(2). The statute "refers to the fact (not the suspicion) of gross misconduct," and requires more than a mere good-faith belief by the employer. *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 680 (7th Cir.1997); *Morales Cotte v. Cooperativa de Ahorro y Credito Yabucoena,* 77 F.Supp.2d 237, 241 (D.P.R.1999) (citing *Kariotis* ).

### C. Claim Preclusion Analysis

When testing whether two causes of action are sufficiently identical for claim preclusion purposes, the First Circuit uses a "transactional" approach that is based on three factors: (1) whether the facts are related in time, space, origin, or motivation; (2) whether they form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations. *Iannochino,* 242 F.3d at 46; *Mass. Sch. of Law v. ABA,* 142 F.3d 26, 38 (1st Cir.1998) (same). I address each factor in turn.

### 1. Relatedness of facts in time, space, origin, and motivation

The first factor of the First Circuit's transactional approach addresses whether the facts of the two cases are related in time, space, origin, and motivation. This factor asks whether the facts arise out of the same transaction, seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis. *Porn v. Nat'l Grange Mut. Ins. Co.,* 93 F.3d 31, 34 (1st Cir.1996). Importantly, "merely because two claims depend on different shadings of the facts or emphasize different elements of the facts, we should not color our perception of the transaction underlying them, creating multiple transactions where only one transaction exists." *Id.* at 35 (citing Restatement (Second) of Judgments § 24 (1982)).

The First Circuit in *Porn* found that the facts underlying a breach of contract action and an insurance tort action were closely related under this test. *Id.* at 34. Porn had first sued his underinsured motorist carrier for breach of contract after it refused to pay his claim resulting from an

accident. *Id.* at 32. After winning a judgment in the first case, Porn sued the carrier again on various claims stemming from an alleged bad faith refusal to pay. *Id.* at 32–33. The court found that the facts in both cases were closely related for three reasons: first, they stemmed from a single accident; second, they addressed the same wrong (the carrier's failure to pay); and third, the factual allegations of both complaints were similar. *Id.* at 34–35. Even though the focus of the breach of contract action was on the circumstances of the car accident, the refusal to pay formed the basis of the breach. *Id.* at 35. And even though the focus of the bad faith action was on the handling of the claim, the circumstances of the accident could determine whether the refusal to pay was reasonable. *Id. See also Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751 756 (1st Cir.1994) (purchasers' claims against sellers of land in two different suits arose from the same transaction where lots formed part of same development and were sold through same fraudulent representations, even though individual sales contracts differed).

The court in *Swaida v. Gentiva Health Services,* 238 F.Supp.2d 325, 328–29 (D.Mass.2002), held that a state-law retaliation cause of action and an ADEA cause of action were factually related under this test. Swaida's first suit alleged that she was terminated for cooperating with a Department of Labor investigation, while the second suit alleged she was terminated because of her age. *Id.* The court found that both claims arose from the circumstances leading up to Swaida's termination, and that she sought compensation for damages caused by that wrongful termination; therefore, they were "founded on the same transaction." *Id.* at 329.

Esteras argues that the test is not satisfied because only the ADEA, Law 100, and Law 80 causes of action consider the Center's motivation and justification for terminating Esteras, while only the COBRA cause of action considers whether Esteras was notified of her insurance coverage rights. However, all of these causes of action share a common inquiry into Esteras's conduct on the job and her termination by the Center. The factual question of whether and how Esteras violated the Center's rules and policies (as alleged in the termination letter) informs the ADEA and Law 100 inquiry into her job performance, the Law 80 inquiry into whether there was "just cause" for her termination, and the COBRA inquiry into whether she engaged in gross misconduct. These common factual elements centering on the reason for her termination form a single transaction from which the causes of action in both suits arise, even though each cause of action depends on additional critical facts not required to prove the others. *Cf. Porn,* 93 F.3d at 35 ("By focusing exclusively on the facts most critical to each claim, Porn has ignored the other facts underlying each claim. Accordingly, we reject Porn's grouping of the facts underlying the two claims into separate transactions."). The facts of Esteras's conduct and dismissal are connected in time, space, origin, and motivation. Nevertheless, Esteras argues that the harm addressed in each suit is distinct; that the ADEA, Law 100, and Law 80 provide remedies for her discharge, while COBRA provides a remedy for the breach of her health insurance rights. Be that as it may, the facts common to all of the causes of action regarding the reasons for her termination are central to the whether Esteras may prevail on any of her claims. This circumstance weighs in favor of viewing the facts of the claims as sufficiently related.

**2. Convenience of trial unit**

Where the witnesses or proof needed in a second cause of action overlap

substantially with those used in the first, the causes of action form a convenient trial unit. *Herman v. Meiselman,* 541 F.3d 59, 63 (1st Cir.2008); *Mass. Sch. of Law,* 142 F.3d at 38. This factor is intended to conserve judicial resources and provides that where the witnesses or proof in the second action "overlap substantially" with those of the first action, the second action should be precluded. *Porn,* 93 F.3d at 36. Where neither cause of action has gone to trial, the court may attempt to predict what witnesses and proof might have emerged, and whether the two causes of action would form a convenient trial unit. *See Mass. Sch. of Law,* 142 F.3d at 38.

The court in *Porn* found that the breach and bad faith actions formed a convenient trial unit because both causes of action required use of the same evidence, testimony, and exhibits. 93 F.3d at 36. Similarly, in *Gonzalez* the court found "the same kinds of sale contracts" formed a convenient unit. 27 F.3d at 36. The court in *Swaida* found that there would be a likelihood that both the retaliation and age discrimination suits would have used common witnesses, including the supervisor, fellow employees, and decisionmakers. 238 F.Supp.2d at 329.

In *Massachusetts School of Law,* the court found that two causes of action brought in separate cases shared factual underpinnings, and even though neither went to trial, they likely would have shared the same witnesses and proof. 142 F.3d at 38. The Massachusetts School of Law ("MSL") sued the American Bar Association ("ABA"), the American Association of Law Schools ("AALS"), and several others in federal district court for violating antitrust law as a result of denying MSL accreditation. *Id.* at 32. The ABA and AALS won on summary judgment in that first suit, and MSL filed a second suit against them and others in state court. *Id.* After removal to federal court, the ABA and AALS won on summary judgment once again. *Id.* On appeal, the court found it likely that in both suits, MSL, ABA, and AALS personnel would have testified about the ABA accreditation process. *Id.* at 38. Even though neither suit reached trial, the likelihood of there being common witnesses "argue[d] powerfully for claim preclusion." *Id.*

Esteras's 2006 suit settled before going to trial, but the parties filed trial briefs identifying the witnesses and testimony they planned to introduce. See Plaintiff's Trial Brief, Defendant's Trial Brief, *Esteras v. San Juan Bautista Medical Center, Inc.,* Civil No. 06–1857(RLA) (D.P.R. Feb. 29, 2008).[4] The Center now argues in its motion that it will produce the same witnesses in the 2008 suit. (Docket No. 12, p. 7). Esteras's response argues that the just cause defenses under the ADEA, Law 100, and Law 80 require different proof than that required to demonstrate gross misconduct under COBRA. (Docket No. 21, ¶¶ 10–11). Considering the existence of common factual inquiries as discussed above, the Center's position is more persuasive. Although Esteras is correct that the legal standard for each cause of action is somewhat different, the convenience as a trial unit turns on the overlap of witnesses and evidence. Esteras offers no proof that different witnesses will be presented to address the inquiry into her performance and conduct. Therefore, applying the *Massachusetts School of Law* analysis, the use of common witnesses here justifies viewing the causes of action in both suits as a convenient trial unit.

---

4. The trial briefs from the 2006 suit were not entered into the record by either party. Because the witnesses the parties planned to use in that trial are of particular relevance here, judicial notice is appropriate. *See Maher,* 272 F.3d at 86 n. 3.

### 3. Conformance to parties' expectations

█ The final factor in determining identicality of the causes of action is whether the treatment of both cases as a unit conforms to the parties' expectations. *Iannochino*, 242 F.3d at 46. Parties' litigation expectations are assessed by looking to the parties' knowledge of the underlying facts at the time of the first suit. *Id.* at 48. Where two claims arose in the same time frame out of similar facts, one would reasonably expect them to be brought together. *Id.*

In *Iannochino*, the court found that it was reasonable to expect a malpractice claim and opposition to a bankruptcy fee application to be brought at the same time. *Id.* at 48–49. The Iannochinos had opposed the award of fees to their former bankruptcy attorneys, but did not dispute the quality of the attorneys' services. *Id.* at 40. The Iannochinos later brought a malpractice suit against the attorneys, but the suit was dismissed on *res judicata* grounds. *Id.* at 41. The court found that because the substance of the fee application depended on the facts of the attorney's performance, the Iannochinos had all of the facts necessary to bring the malpractice cause of action. *Id.* at 48–49. This knowledge made it reasonable for the attorneys to expect all concerns about the quality of their work to be resolved in the fee application dispute. *Id.* at 49.

The court in *Swaida* found that the parties could reasonably have expected Swaida's retaliation and ADEA causes of action to be brought together. 238 F.Supp.2d at 329. Applying *Iannochino*, the court found that Swaida's participation in a state age discrimination proceeding two years before filing her retaliation suit demonstrated she knew of the factual basis for her ADEA claim when she filed that first suit. *Id.* There was also no procedural bar to bringing the ADEA claim in that first suit. *Id.* at 329–30.

Esteras argues that the COBRA cause of action arises not from the circumstances of her termination, but from the Center's failure to notify her of her rights, and that different evidence as to damages must be presented. (Docket No. 21, ¶¶ 8–9). However, the *Iannochino* analysis shows that the key question is whether Esteras had knowledge of the facts necessary for each claim, and whether it was therefore reasonable for the Center to expect the COBRA cause of action to be brought in the same suit as the ADEA, Law 100, and Law 80 causes of action. As discussed above, whether the Center had failed to provide the COBRA notification was known by the time the 2006 suit was filed. Esteras makes no argument that she lacked necessary information at the time to bring the COBRA cause of action, or that she was procedurally barred from bringing it. Therefore, treating the claims as a unit conforms to the parties' reasonable expectations.

Since, each of the three factors weighs in favor of viewing the causes of action brought in the 2006 case as sufficiently identical to the COBRA cause of action currently before the court, the second element of the claim preclusion test is met. Accordingly, the COBRA cause of action is barred under the principle of *res judicata*.

### CONCLUSION

In view of the foregoing, the Center's motion for summary judgment (Docket No. 12) is **GRANTED** and plaintiff's claim under COBRA, 29 U.S.C. §§ 1161–1169, is **DISMISSED WITH PREJUDICE.** Judgment to be entered accordingly.

**IT IS SO ORDERED.**